J. A27007/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
    :        PENNSYLVANIA
    v.    :
    :
LEELAND R. BARNHART,    :    No. 417 WDA 2013
    :
    Appellant    :

Appeal from the Judgment of Sentence, October 12, 2012,
in the Court of Common Pleas of Greene County
Criminal Division at Nos. CP-30-CR-0000485-2011,
CP-30-CR-0000487-2011

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED MARCH 17, 2015**

A jury convicted Leeland R. Barnhart of involuntary deviate sexual intercourse ("IDSI") and related offenses as a result of his sexual activity with R.B.; at the time of the offenses, R.B. was 15 years old.  Herein, appellant appeals from the judgment of sentence entered on October 12, 2012.  We affirm the convictions, vacate the judgment of sentence, and remand for resentencing

The facts, as summarized by the trial court, are as follows.

> The charges against Defendant arose out of events in the summer of 2011.  On July 25, 2011, the victim, R.B. (d/o/b 10/[-]/95) left the family home in Carmichaels and moved in with Defendant (d/o/b 5/[-/]1976).  Her parents did not know where she was and asked her friend K. if she knew her whereabouts.  K. said she thought R.B. might be at "Lee's house".  R.B.'s father went to Defendant's

mobile home and asked if he knew where his daughter was. Defendant said she was not there. R.B.'s father told Defendant that R.B. was only 15. R.B.'s parents made fliers and posted them around the neighborhood. They informed the police, the district attorney and Greene County Children and Youth Services (CYS). At some point, the parents got a phone call from a runaway hotline informing them that R.B. had called and asked the hotline to tell her parents she was safe and in good health. After about nine days, CYS located R.B. at Defendant's home. More precisely, a caseworker knocked on Defendant's door and talked to him. After about 45 minutes of conversation, Defendant admitted that R.B. was in the place and brought her out. The caseworker informed the police that R.B. had been found and then took her home to her parents.

After police and CYS personnel interviewed R.B., Defendant was charged with [IDSI], Sexual Assault, Aggravated Indecent Assault, and other sexual offenses. Of great significance in this case is the fact that at the time of these events[,] R.B. was 15 years old. She would not be 16 until the following October. At a separate number, Defendant was charged with Concealing the Whereabouts of a Child, Interfering with the Custody of a Child and related offenses. The two numbers were joined for trial.

Trial court memorandum, 1/31/13 at 1-2.

On May 21, 2012, a four-day jury trial began. The victim testified and admitted that she lied about her age to others and lived her life as a 17-year-old. (Notes of testimony, 5/21-26/12 at 153.) R.B. testified that she met appellant through her friend K.; appellant lived a few blocks away. (**Id.** at 155.) The next night, she snuck out of her house to visit appellant. During this visit, the victim had sex, including oral sex, with appellant. (**Id.**

at 160.) The following night, R.B. snuck out again and went to appellant's house; the two engaged in sexual intercourse again. (*Id.* at 164.) The victim testified that she deceived appellant about her age. (*Id.* at 164-165.)

The following day, Sunday, R.B. revealed her real age of 15 to appellant upon the encouragement of K. (*Id.* at 166.) R.B. testified that while appellant was initially upset, he told her "it would be all right." (*Id.* at 168.) On July 23, 2011, R.B. ran away from home and went to stay with appellant. (*Id.* at 170.) R.B. stayed at appellant's house for nine days; she testified that they had sex approximately twice a day. (*Id.* at 181.)

Appellant testified in his own defense. He explained that he had known K., who lived up the street from his house with her mother, since K. was 13 years old. (*Id.* at 649.) Appellant stated that when he met R.B., she told him she was 18 years of age. (*Id.* at 653.) Appellant's time-line of the dates they saw each other differed from R.B.'s. Appellant said they were not physically intimate until after the fifth or sixth day they met -- approximately June 18th to June 21st. (*Id.* at 658-659, 672.) Appellant said that they saw each other again the following day but they did not have sex. (*Id.* at 668.) Appellant testified that he was not made aware of her real age until the day she ran away when R.B.'s father came to his home. (*Id.* at 680.) Once he found out her age, he refused to have sex with R.B.

Two separate motions for continuance filed by the defense were granted. (*See* docket #6, 7.) On February 8, 2012, appellant waived his

Rule 600 rights. (Docket #12.) On February 21, 2012, the court granted a motion for DNA testing. (Docket #15.) The trial court denied a defense request for a psychological/competency evaluation to determine if the victim understood her obligation to tell the truth. (Docket #21.) The Commonwealth filed a motion **in limine** pursuant to the Rape Shield Law, and the trial court granted the motion, refusing to admit into evidence R.B.'s written admissions that she had, on other occasions, lied about her age and had sex with older men. (Docket #3, 42.)

The jury rendered a verdict of guilty on all counts. A pre-sentence investigation was prepared; and on October 12, 2012, appellant was sentenced to a total sentence of 10½ to 21 years, including two mandatory sentences required by 42 Pa.C.S.A. § 9718(a). (Docket #47.) Appellant filed a timely post-sentence motion. A hearing was held, and thereafter, the motion was denied. Appellant filed a timely notice of appeal and was not ordered to file a concise statement pursuant to Pa.R.A.P. 1925(b). The trial court has not filed an opinion, but directed this court to its memorandum dated January 31, 2013. The following issues have been presented for our review.

> I.   DID THE COURT ERR BY ALLOWING THE COMMONWEALTH TO AMEND THE INFORMATIONS ON THE LAST DAY OF TRIAL WHEN THE AMENDMENT MAY HAVE MATERIALY [sic] CHANGED THE DEFENSE CAUSING PREJUDICE TO THE APPELLANT?

II. DID THE COURT ERR BY GRANTING AND THEN DENYING DEFENDANT'S REQUEST FOR A COMPETENCY EVALUATION OF THE VICTIM TO DETERMINE IF SHE UNDERSTOOD HER DUTY TO TELL THE TRUTH WHEN THE VICTIM WAS UNDER THE AGE OF 18, HAS A PROPENSITY FOR LYING, AND PRESUMABLY DID NOT UNDERSTAND HER DUTY TO TELL THE TRUTH?

III. DID THE TRIAL COURT ERR BY NOT ALLOWING THE VICTIM'S OUT OF COURT WRITTEN STATEMENTS TO BE INTRODUCED AT TRIAL AND INTO EVIDENCE?

IV. DOES THE MANDATORY SENTENCING REQUIREMENT FOR [IDSI] VIOLATE DEFENDANT'S CONSTITUTIONAL RIGHT AGAINST EXCESSIVE, CRUEL AND UNUSUAL PUNISHMENT, AND IS OVERBROAD AND OVERREACHING BY INCLUDING ORAL SEX AS "DEVIATE", AND/OR DOES THE STATUTE IMPOSE A GROSSLY DISPROPORTIONATE SENTENCE FOR BEHAVIOR THAT IS DEEMED NORMAL BY SOCIETY?

V. WAS THE JURY'S VERDICT BEYOND THE WEIGHT OF THE EVIDENCE AND/OR WAS THERE SUFFICIENT EVIDENCE TO CONVICT APPELLANT OF THE CRIMES CHARGED WHEN THE VICTIM TESTIFIED THAT SHE HAD LIED ABOUT HER AGE AND GENERALLY LIES ABOUT HER AGE AND HOLDS HERSELF OUT TO BE OLDER THEN SHE ACTUALLY IS[?]

VI. DID THE COURT THE COURT [sic] VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY FORCING HIM TO WAIVE HIS RULE 600 SPEEDY TRIAL RIGHTS IN ORDER TO OBTAIN EXCULPATORY EVIDENCE FROM THE COMMONWEALTH?

Appellant's brief at 18-19.

The first issue presented concerns whether the trial court properly granted the Commonwealth leave to amend the information pursuant to Pa.R.Crim.P. 564. The trial court permitted the Commonwealth to amend the criminal information at the conclusion of trial to correct a defect in statutory recitation and to alter the dates of several alleged offenses. Appellant argues that he was prejudiced by the late amendment of a criminal information. We disagree.

According to Pa.R.Crim.P. 564, the court may permit amendment of an information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. Moreover, "[u]pon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice." *Commonwealth v. Roser*, 914 A.2d 447, 454 (Pa.Super. 2006.) "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa.Super. 2006). "[O]ur courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules." *Commonwealth v. Grekis*, 601 A.2d 1284, 1288 (Pa.Super. 1992).

The original criminal information at case number 485-CR-2011 charged appellant with various crimes involved in concealing the whereabouts of the victim from July 7, 2011 to August 2, 2011. During trial, testimony was offered to indicate that the concealment and related crimes did not occur until the victim had run away from home on July 25th. At the conclusion of trial, the Commonwealth was permitted to amend the information by changing the date of occurrence from July 7th to July 25, 2011.

The court also permitted the Commonwealth to amend the information at case number 487-CR-2011 by deleting a reference to the victim being under the age of 13, which was inadvertently included in the statutory recitation, although the specific facts in the "to-wit" section listed the victim's accurate age and listed the accurate section charged. It had never been alleged that the victim was under 13 at any time.

Appellant now argues that the amendments altered his defense. Appellant claims he was prejudiced as he had to prepare a defense for a larger time frame and then did not have to use it. Appellant also argues that since the amended date is beyond the first time that he had sexual intercourse with the victim, he would not have testified to having had intercourse with the victim before July 25, 2011 had that date originally been used. (Appellant's brief at 30.)

We agree with the trial court that these assertions are not the type of prejudice contemplated by the rules. (Trial court memorandum, 1/31/13 at 6.) Further, as the Commonwealth notes, appellant never sought to have the two cases severed, so the admissions concerning the sexual nature of the relationship prior to July 25th would have been inadmissible in the trial involving the non-sexual charges. The victim testified that she had sex with appellant from July 7th through the time she returned home. The jury obviously found R.B.'s testimony credible and convicted him based on her rendition of the facts. We cannot find the amendment of the date fatal to appellant's case.

Next, appellant argues the trial court erred by denying appellant's request for a competency evaluation of the victim to determine if she understood her duty to tell the truth, as she was under the age of 18 and has a propensity for lying.[1] (Appellant's brief at 33.) Following our review, we find this claim to be meritless.

Generally, a witness is presumed competent to testify, and the burden falls on the objecting party to demonstrate that a witness is incompetent. ***Commonwealth v. Walter***, 93 A.3d 442, 451 (Pa. 2014). When a witness is at least 14 years old, he or she is entitled to the same presumption of competence as an adult witness. ***Commonwealth v. McLaurin***, 45 A.3d

---

[1] Initially, a motions court judge granted the motion for an evaluation and competency hearing; however, on February 23, 2012, the Honorable Brianna Christine vacated the order.

1131 (Pa.Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013), *overruled on other grounds by Commonwealth v. Pander,* 100 A.3d 626 (Pa.Super. 2014). However, in the case of a child witness, once evidence of corruption is established, the court must make a searching judicial inquiry into the mental capacity of a witness under the age of 14; that investigation involves whether the child witness has the following: "(1) capacity to observe or perceive the occurrence with a substantial degree of accuracy; (2) ability to remember the event which was observed or perceived; (3) ability to understand questions and to communicate intelligent answers about the occurrence, and (4) consciousness of the duty to speak the truth." *Commonwealth v. Delbridge*, 855 A.2d 27, 39 (Pa. 2003) ("*Delbridge I*"). *See also Commonwealth v. Delbridge*, 859 A.2d 1254 (Pa. 2004) ("*Delbridge II*") (explaining judicial competency investigations apply in cases where sexual abuse complainants are young children because child's memory is uniquely susceptible to falsely implanted suggestions which may cause child difficulty in distinguishing fact from fantasy when called to testify).

"These concerns clearly become less relevant as a witness' age increases, ultimately being rendered totally irrelevant as a matter of law by age fourteen." *Commonwealth v. Judd*, 897 A.2d 1224, 1229 (Pa.Super. 2006), *appeal denied*, 912 A.2d 1291 (Pa. 2006) (emphasis added). In *Judd*, the juvenile sexual assault victim was 15 years old when she testified

at trial. The court stated "any issue with her inability to correctly remember the events in question is properly a question of credibility not of taint." *Id.* at 1229.

Based on the foregoing, we discern no error in the trial court's decision to deny appellant's request for a psychological evaluation. There is no dispute that the victim was 15 years and 9½ months old at the time of the offenses and 16 when she testified. (Appellant's brief at 25.) *See McLaurin*, *supra*; *Judd*, *supra*. Hence, she was presumed competent, and any allegation concerning her lies to appellant and her parents goes to her credibility, not competency. *Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013). "A determination of credibility lies solely within the province of the factfinder. Moreover, any conflict in the testimony goes to the credibility of the witnesses and is solely to be resolved by the factfinder." *Commonwealth v. Price*, 616 A.2d 681, 685 (Pa.Super. 1992) (internal citations omitted). Furthermore, in *Commonwealth v. Robinson*, 5 A.3d 339, 342-344 (Pa.Super. 2010), *appeal denied*, 19 A.3d 1051 (Pa. 2011), this court upheld the trial court's refusal to permit the defense to present expert testimony on the subject of memory error as it would be another way to improperly permit an expert to comment on the credibility of a witness.

The victim testified that she had lied about her age to appellant and to others. This admission, however, does not demonstrate an inability to understand the duty to tell the truth. Appellant has failed to overcome the

presumption that R.B. was competent to testify beyond his assertion that she lives in a "fantasy world." (Appellant's brief at 34.) However, trial counsel had the opportunity to repeatedly challenge the victim's credibility on cross-examination and attempted to depict her as a dishonest girl who fabricated the assault. Likewise, we find no merit to appellant's suggestion that R.B.'s memory was tainted by the police and caseworkers, citing to **Delbridge I**, **supra**. **Delbridge I** is distinguishable as it involved the influence of authority figures over young children, ages six and four, who made allegations of sexual abuse. We will not disturb the court's determination.

The third claim presented is whether the trial court erred by not allowing the victim's out-of-court written statement to be introduced at trial. (Appellant's brief at 38.) No relief is due.

The day before trial, the Commonwealth filed a motion **in limine** pursuant to the Rape Shield Law, 18 Pa.C.S.A. § 3104, to prohibit appellant from using R.B.'s written statements to CYS and to the police which contained the victim's admission that she was having sex with older men when they did not know her age. In the statements, R.B. averred that she would lie to her friend K. about her age, and K. would unknowingly confirm her age to men. Appellant sought to introduce these statements to show the victim had acted in conformity in the present case as she had in the past.

Appellant argued that the word "relationship" could be substituted for "sex" so the victim's scheme could be brought before the jury.

The court ruled the probative value was not outweighed by the prejudice the victim would receive by her sexual past coming into evidence. The motion was granted and the statements were not to be admitted. The trial court ruled, however, that appellant could question R.B. about lying to others, lying to men, and lying about her age. Appellant could not ask her about lying to older men to have sex with them, as such questioning would violate the Rape Shield Law.

We find no error in the trial court's order prohibiting the defense from impeaching R.B.'s credibility using her past sexual history. Appellant sought to introduce R.B's prior written statements admitting she had previously engaged in sex with men who did not know her age in an attempt to show she acted in conformity with appellant as she had in the past. Appellant cites Pa.R.E. 404, which states, "in a criminal case, subject to limitations imposed by statute, evidence of a pertinent trait of character of the alleged victim is admissible when offered by the accused, or by the prosecution to rebut the same."

However, as the trial court notes, appellant overlooks the limitation of the Rape Shield Law. Under Section 3104, "[e]vidence of the specific instances of the alleged victim's past sexual conduct . . . shall not be admissible in prosecution . . . except evidence of the alleged victim's past

sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence."

Here, none of the evidence appellant sought to introduce involved evidence of R.B.'s sexual conduct with appellant. Evidence of past sexual conduct by the victim with third persons is not admissible for any purpose; such evidence has been determined to be of little relevance to the issue of consent between the victim and a defendant who has not personally engaged in prior sexual conduct with the victim. **Commonwealth v. Dear**, 492 A.2d 714, 718 (Pa.Super. 1985). R.B.'s sexual past has no bearing on the veracity of her allegations against appellant. In **Commonwealth v. Beltz**, 829 A.2d 680, 684 (Pa.Super. 2003), we determined that a rape victim's prior sexual conduct with another man besides defendant was inadmissible because it was not "of a nature to negate the intercourse between the victim and appellant." The fact that R.B. may have lied to other men and engaged in sexual activity is not dispositive of the sexual interaction between appellant and R.B.

Further, as the Commonwealth points out, "appellant was not without the benefit of having the jury know that the victim lied regarding her age. Victim's credibility was adequately brought before the jury without the prejudicial effect of having her sexual history explored." (Commonwealth's brief at 30-31.) By R.B.'s own admission, she repeatedly lied to others

about her age.  The trial court properly granted the Commonwealth's motion *in limine*.

Next, appellant claims that the ten-year mandatory sentence pursuant to 42 Pa.C.S.A. § 9718 (relating to offenses against infant persons), for a violation of 18 Pa.C.S.A. § 3123(a)(7), is cruel and unusual punishment in violation of Article 1, Section 13 of the Pennsylvania Constitution.  We, however, are mindful of the United States Supreme Court's decision in *Alleyene*, ___ U.S. ___, 133 S.Ct. 2151 (2013), in which the Court expressly held that any fact increasing the mandatory minimum sentence for a crime is considered an element of the crime to be submitted to the fact-finder and found beyond a reasonable doubt.  Here, the court imposed two mandatory minimum sentences under Section 9718 (governing sentences for certain offenses committed against minor victims) for appellant's convictions of [IDSI] and aggravated indecent assault.  (Docket #47.)  We are mindful that *Alleyne* was published after sentence was imposed in this case, but it applies nevertheless.  *See Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa.Super. 2013) (*en banc*) (holding violations of *Alleyne* could not be waived).

Recently, this court directly addressed the constitutionality of Section 9718 in *Commonwealth v. Wolfe*, ___ A.3d ___, 2014 WL 7331915 (Pa.Super. 2014).  In *Wolfe*, a jury convicted the defendant of sex crimes committed against a minor victim, including two counts of IDSI.  The

court imposed ten-year mandatory minimum sentences for each IDSI conviction, pursuant to Section 9718(a)(1). On appeal, this court emphasized that Section 9718 "contains the same format" as the unconstitutional statues at issue in ***Commonwealth v. Newman***, 999 A.3d 86 (Pa.Super. 2014) (***en banc***) (relying on ***Alleyne*** and holding Section 9712 is unconstitutional as it "permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence that the defendant was dealing drugs and possessed a firearm, or that a firearm was in close proximity to the drugs"), and ***Commonwealth v. Valentine***, 101 A.3d 801 (Pa.Super. 2014) (involving appeal of sentence arising from jury trial; extending logic of ***Alleyne*** and ***Newman*** to Sections 42 Pa.C.S.A. §§ 9712, 9713 and holding those sections are likewise unconstitutional insofar as they permit automatic increase of defendant's sentence based on preponderance of evidence standard). ***Id.*** at *5. Consequently, the ***Wolfe*** court held Section 9718 is also facially unconstitutional.

The ***Wolfe*** court noted:

> We recognize that this specific case is unique insofar that the additional fact triggering the mandatory sentence is also contained as an element within the subsection of the IDSI statute under which [the defendant] was convicted. Therefore, in order to convict Appellant of IDSI, the Commonwealth was already required to prove beyond a reasonable doubt that the victim was less than 16 years old.

> However, we are not concerned with Appellant's conviction in this appeal, only the imposition of the mandatory minimum sentence.
>
> . . . .
>
> [I]n this case, although the jury was required to find that the victim was less than 16 years of age in order to convict Appellant, we cannot ignore the binding precedent from an **en banc** decision of this Court. **Newman** stands for the proposition that mandatory minimum sentence statutes in Pennsylvania of this format are void in their entirety. **Newman**, **supra**; **Valentine**, **supra**. As Section 9718 is indistinguishable from the statutes struck down in **Newman** and **Valentine**, we are constrained to conclude that Section 9718 is also facially void. As a result, we conclude the trial court erred in imposing the ten-year mandatory minimum.

Id. at *5-6 (internal citations omitted).

Herein, at the sentencing hearing, the court applied Section 9718. Based on the cases cited, we vacate and remand for resentencing.

The next issue presented purports to challenge the sufficiency of the evidence and claims the verdict was against the weight of the evidence. We would affirm the sufficiency of the evidence claim based on the trial court's opinion. (Trial court memorandum, 1/31/13 at 6-8.)

Our standard of review concerning the weight of the evidence is as follows.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration

to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis omitted) (citations omitted).

Instantly, appellant's argument focuses on the fact that the victim lied to appellant about her age. Appellant cites evidence favorable to his position. For example, appellant directs our attention to R.B. not being able to identify what specific tattoos were on appellant's body, not knowing what a circumcised penis is, and the fact that appellant was not an identified sperm contributor in the underwear tested. As the Commonwealth notes,

the jury was aware of each of these factors and aware of appellant's version of the events. While appellant may articulate a plausible alternative scenario, such a claim is dependent on the credibility of the witnesses, which, as stated, is within the sole province of the jury. Thus, we discern no abuse of discretion by the trial court in denying appellant's challenge to the weight of the evidence.

In his final question, appellant suggests that the Commonwealth purposefully failed to timely disclose exculpatory evidence, the DNA test results from R.B.'s underwear, which forced appellant to give up his constitutional right to a speedy trial and waive his Rule 600 speedy trial rights. Appellant's argument is illogical as he was brought to trial well within the 365-day period. Pa.R.Crim.P. 600(A)(2)(a). The criminal complaint was filed August 12, 2011, and appellant's trial began 283 days later on May 21, 2012. No relief is due.

Accordingly, we affirm appellant's convictions, but we vacate the judgment of sentence and remand for resentencing without imposition of mandatory minimum sentences.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction relinquished.

J. A27007/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2015

IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :

vs. : Nos. 485, 487, Criminal 2011

LEELAND R. BARNHART, :
                Defendant. :

## MEMORANDUM

Defendant, Leeland Barnhart, has filed Post-Trial Motions asking that we declare a "mistrial" or order another appropriate remedy.

The charges against Defendant arose out of events in the summer of 2011. On July 25, 2011, the victim, R.B. (d/o/b: 10/18/95) left the family home in Carmichaels and moved in with Defendant (d/o/b: 5/131976). Her parents did not know where she was and asked her friend K. if she knew her whereabouts. K said she thought R.B. might be at "Lee's house". R.B.'s father went to Defendant's mobile home and asked if he knew where his daughter was. Defendant said she was not there. R.B.'s father told Defendant that R.B. was only 15. R.B.'s parents made fliers and posted them around the neighborhood. They informed the police, the district attorney and Greene County Children and Youth Services (CYS). At some point, the parents got a phone call from a runaway hotline informing them that R.B. had called and asked the hotline to tell her parents she was safe and in good health. After about nine days, CYS located R.B. at Defendant's home. More precisely, a caseworker knocked on Defendant's door and talked to him. After about 45 minutes of conversation, Defendant admitted that R.B. was in the place and brought her out. The caseworker informed the police that R.B. had been found and then took her home to her parents.

5

After police and CYS personnel interviewed R.B., Defendant was charged with Involuntary Deviate Sexual Intercourse, Sexual Assault, Aggravated Indecent Assault and other sexual offenses. Of great significance in this case is the fact that at the time of these events R.B. was 15 years old. She would not be 16 until the following October. At a separate number, Defendant was charged with Concealing the Whereabouts of a Child, Interfering with the Custody of a Child and related offenses. The two numbers were joined for trial.

After a four day trial in May of 2012, the jury rendered a verdict of guilty on all counts. A presentence investigation was prepared and on October 12, 2012, Defendant was sentenced to a total sentence of 10 and ½ to 21 years, including the mandatory 10 year sentence required by 42 Pa. C.S.A. § 9718(a).

Defendant filed timely post-trial motions and a supporting brief. The Commonwealth responded and we heard oral argument. We will consider Defendant's issues individually.

### Sufficiency of Evidence

As noted above there were two sets of charges brought against Defendant, the sexual offenses and the interference with custody offenses. R.B. testified that she went to Defendant's mobile home on or about July 25, 2011, and stayed there, more or less continuously, until she left with the CYS caseworker on August 2, 2011. The only significant interruption in her stay was when she and Defendant went to a motel in Uniontown for two days. (Defendant says he took R.B. to the motel and she stayed there alone).

According to R.B., she met Defendant through her friend K. and after spending some time with him over a period of days or weeks snuck out of her house on two occasions during the night and visited Defendant (they only lived a few block apart). During these nighttime visits, they had sex, including oral sex. According to Defendant, he believed at that time that R.B. was

6

18, because that is how old she said she was and he believed her. On the morning of July 25, 2011, R.B.'s father appeared at Defendant's home asking her whereabouts. Only then did Defendant learn that she was only 15. R.B.'s father left and shortly thereafter R.B. appeared at the house, with luggage. She then admitted to Defendant that she was only 15. Regardless, Defendant let her move in. Although they were together for the next nine days, said Defendant, except when he went to work, or when she stayed by herself at the motel in Uniontown, they did not have sex. According to R.B., they had sex a lot. Whatever physical evidence existed, and it was not much, was inconclusive.

In considering a sufficiency of the evidence claim, a Court must determine whether the evidence and all reasonable inferences therefrom received or viewed in the light most favorable to the verdict winner were sufficient to enable the fact finder to find every element of the crime charged beyond a reasonable doubt. Commonwealth v. Kling, 731 A.2d 145 (Pa. Super 1999). Here, it seems to be Defendant's position that because R.B. admitted telling K. and others at various times that she was either 17 or 18, her testimony that she and Defendant had sex after July 25, 2011, was literally incredible; that no jury could possibly find her believable. This, of course, is not the law. A fact finder is free to believe some, all or none of a witness's testimony, even when a witness admits to having previously lied. Commonwealth v. Parente, 133 A.2d 561, (Pa. Super 1957); Commonwealth v. Hayes, 460 A.2d 791 (Pa. Super 1983). The testimony of the victim, standing alone, is sufficient to convict in sex offense prosecutions. Commonwealth v. Purcell, 589 A.2d 217 (Pa. Super 1991).

Defendant also argues that the evidence showed that R.B. was free to leave at any time and therefore he could not be guilty of concealing the whereabouts of a child and interfering with the custody of a child. Defendant misunderstands what he is charged with. He was not charged

7

with kidnapping or unlawful restraint or false imprisonment, all of which have an element of force or compulsion. The offenses he was charged with contained no such element.

## Weight of the Evidence

Defendant also contends that the jury's verdict was against the weight of the evidence. A motion for a new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. It is an appeal to the trial court to award a new trial because the jury's verdict is so contrary to the evidence as to shock one's sense of justice and make the award of a new trial necessary so that right might be given another chance to prevail. Commonwealth v. Hodge, 658 A.2d 386 (Pa. Super 1995).

Here, both the Defendant and the witness agree that they had passionate sex, including oral sex, on two occasions before July 25, 2011. Defendant testified that she told K and Defendant that she was 17. Defendant testified that she told him she was 18. If either fact were true, Defendant would not be subject to the sentence mandated by 42 Pa. C.S.A. §9718(a). According to Defendant, he first learned R.B.'s true age when her father appeared at his door asking her whereabouts. Shortly thereafter R.B. showed up and moved in for approximately nine days. Defendant says they lived together as brother and sister; R.B. says they had sex a lot, including oral sex. The issue for the jury was entirely one of credibility.

Defendant's argument is that R.B.'s initial lie about her age renders her incredible as a matter of law about everything else. We disagree. It is the core function of a jury to determine credibility, especially in a he said/she said scenario. The jury having made its unanimous decision, it would be an abuse of discretion for the trial court to overrule it.

8

## Amendment of Information

The information as originally filed accused Defendant of various sexual offenses with R.B., a girl under the age of 16, between July 7 and August 2, 2011. One of the elements of these offenses is the victim's age. A defendant may rise as a defense that he reasonably thought that a child was at least 16. 18 Pa. C.S.A. §3102. During the course of the trial it became apparent that the Commonwealth could not establish Defendant's knowledge of R.B.'s true age before July 25, 2011, when her father spoke to Defendant. It then moved to amend the information to charge Defendant only with events that occurred on or after July 25, 2011.

Pa. R. Crim. P. 564 provides that the "court may allow an information to be amended when there is a defect in... the date changed, provided the information as amended an additional or different offense". Here, the amendment obviously brought no new charges and changed no elements of anything Defendant was charged with. See Commonwealth v. J.F., 800 A.2d 942 (Pa. Super 2002). It reduced the time period that he had to defend. Had the trial proceeded with the original dates in the information, testimony may have been insufficient to show violations of 18 Pa. C.S.A. §3123(a)(7) before July 25, but it would have been sufficient and relevant to establish violations of 18 Pa. C.S.A. §6318(a)(1), Unlawful Contact with a Minor, and §6301(a)(1)(i), Corruption of a Minor.

Defendant argues that he was prejudiced because he had to prepare a defense for the period of July 7 to July 25, 2011, and then did not have to use it. This is not the kind of prejudice that would entitle a defendant to relief.

## Change of Judges

Next, Defendant argues that he was prejudiced because the motion judge and the trial judge were not the same person. We are aware of no rule, statute or authority which requires that

9

a judge who hears a pretrial motion must then preside over the trial.

If Defendant's purpose on this issue is to ask for reconsideration of Judge Toothman's order vacating his earlier order directing R.B. to undergo a psychological examination, citing Commonwealth v. Robinson, 5 A.2d 339 (Pa Super 2010), that motion is too late and would be denied even if it were not. In his brief Defendant incorrectly states "Robinson and it's [sic] progeny all address the matter of expert witnesses testifying for the Commonwealth and bolstering the victims [sic] testimony and credibility". In fact Robinson attempted to call an "expert in the field of human memory, perception and recall" to attack the reliability of the victim's identification of Robinson. Defendant's argument here is that there should be separate rules for the Commonwealth and the defendant. We decline to accept that argument.

Defendant argues that he should have had the benefit of a competency hearing to ascertain whether R.B.'s memory was tainted by the police, her parents and case workers, citing Commonwealth v. Delbridge, 855 A.2d 23 (Pa 2003). The Delbridge court considered the question of whether taint is a subject properly explored in a competency hearing. It defined "taint" as the implantation of false memories or distortion of actual memories by suggestive interview techniques. The children in Delbridge were ages 6 and 4 at the time of the alleged abuse. The court observed: "The capacity of young children to testify has always been a concern as their immaturity can impact their ability to meet the minimal legal requirement of competency. Common experience informs us that children are, by their very essence, fanciful creatures who have difficulty distinguishing fantasy from reality; who when asked a question want to give the 'right' answer, the answer that pleases the interrogator; who are subject to repeat ideas placed in their heads by others; and who have limited capacity for accurate memory". So it seems to be Defendant's argument that R.B., whom he says he reasonably thought to be a young woman of

10

18, a woman for whom he bought cigarettes, is making up the part about sex with Defendant from July 25 to August 2, 2011, because she wanted to please the interrogators (her parents? CYS?). This is not a case to consider the issue of taint.

Every witness is presumed to be competent. Pa. R. E. 601. Commonwealth v. Dowling, 883 A.2d 570 (Pa 2005). The burden is on the objecting party to demonstrate incompetency. Evidence that a teenage girl lied about her age is no evidence of incompetency. Defendant was not entitled to a competency hearing.

### DNA Evidence

Certain underwear belonging to R.B. was sent to the PSP Crime Lab in Greensburg for DNA testing. The lab report was dated February 27, 2012. The DA sent to a copy to Defendant on March 9, 2012 (which was the same date it was received). By that time Defendant had received a commitment to funds from the County (see Order of February 8, 2012) for his own DNA from Defendant as well as two other males. The Commonwealth's expert opined that Defendant's DNA in R.B's underwear was likely "non-sperm" DNA.

Defendant complains that he was forced to waive his Rule 600 rights to a speedy trial in order to obtain the benefit of the DNA analysis. Had he chosen, he could have gone to trial with no DNA evidence, which as it turned out is essentially what happened. What Defendant seems to be arguing is that if the Commonwealth cannot produce a DNA report in sufficient time for a defense expert to review it within six months of filing the complaint, then a Defendant wanted the benefit of DNA analysis, he cannot now complain that it takes a long time to get it.

### R.B.'s Prior Statements

Next, Defendant again argues that R.B.'s admissions that she had on other occasion lied

about her age and then had sex with other men should have been presented to the jury. He cites and quotes Pa. R.E. 404 (a)(2)(i); "In a criminal case, subject to limitations imposed by statute, evidence of pertinent trait of character of the alleged victim is admissible when offered by the accused.....". Defendant overlooks the phrase, "subject to limitations imposed by statute". In cases like this there is a statute that specifically speaks to the situation, 18 Pa. C.S.A. §3104(a), the Rape Shield Law. Courts may simply not permit an exploration of a sex crime victim's sexual history.

## Mandatory Sentence

Finally, Defendant argues that the ten year mandatory sentence for a violation of 18 Pa. C.S.A. §3123(a)(7) is cruel and unusual punishment. This issue has been previously presented to and rejected by our Courts. Commonwealth v. Chmiel. 610 A.2d 1058 (Pa Super 1992), appeal denied 629 A.2d 1376, cert denied 114 S Ct 605, 126 L.Ed.2 569.

There is no basis to grant Defendant a new trial.

12

IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA       :

     vs.                              :         Nos. 485, 487, Criminal 2011

LEELAND R. BARNHART,           :

         Defendant.             :

<u>ORDER</u>

AND NOW, this 12th day of October 2012, the Defendant, Leeland Barnhart, having been convicted by a jury of his peers on May 25, 2012, the Court sentences the Defendant as follows:

At No. 487, Criminal Sessions, 2011, for the charge of Involuntary Deviate Sexual Intercourse, in violation of Section 3123(a)(7) of the Pennsylvania Crimes Code, the Court sentences the Defendant to a term of not less than ten (10) years nor more than twenty (20) years in the State Correctional System, as required by 42 Pa. C.S.A. §9718(a). For the charge of Aggravated Indecent Assault, in violation of Section 3125(a) of the Pennsylvania Crimes Code, the Court sentences the Defendant to a term of not less than five (5) years nor more than (10) years, as required by 42 Pa. C.S.A. §9718(a), with this sentence to run concurrent with the sentence for the violation of 3123(a)(7). For the charge of Statutory Sexual Assault, in violation of Section 3122.1 of the Pennsylvania Crimes Code, the Court sentences the Defendant to a term of not less than one (1) year nor more than two (2) years, to be served concurrent with his sentence for violation of Section 3123(a)(7). For the charge of Unlawful Contact with a Minor, in violation of Section 6318 of the Pennsylvania Crimes Code, the Court sentences the Defendant to a term of not less than four (4) years nor more than eight (8) years, with this sentence to run concurrent with the sentence for the violation of 3123(a)(7). For the charge of Corruption of Minors of a Sexual Nature, in violation of Section 6301(a)(1)(i) of the Pennsylvania Crimes

13

Code, the Court sentences the Defendant to a term of not less than one (1) year nor more than two (2) years, to be served concurrent with his sentence for violation of Section 3123(a)(7). For the charge of Indecent Assault of a Person under Age 18, in violation of Section 3126(a)(8) of the Pennsylvania Crimes Code, the Court sentences the Defendant to term of not less than three (3) months nor more than twelve (12) months, to be served concurrent with his sentence for violation of Section 3123(a)(7).

At No. 485, Criminal Sessions, 2011, for the charge of Concealing the whereabouts of a Child, in violation of Section 2909(a) of the Pennsylvania Crimes Code, the Court sentences the Defendant to a term of not less than three (3) months nor more than twelve (12) months, with this sentence to be served consecutive to his sentence for the violation of 3123(a)(7) at No. 487, Criminal Sessions, 2011. For the charge of Interference with the Custody of a Child, in violation of Section 2904(a) of the Pennsylvania Crimes Code, The Court sentences the Defendant to a term of not less than three (3) months nor more than twelve (12) months, with this sentence to be served concurrent with his sentence for violation of Section 2909(a). for the charge of Corruption of Minors, in violation of Section 6301(a)(1)(ii) of the Pennsylvania Crimes Code, the Court sentences the Defendant to a term of not less than six (6) months nor more than twelve (12) months, with this sentence to be served concurrent with his sentence for violation of Section 2909(a). For the charge of Luring a Child in a Motor Vehicle, Corruption of Minors, in violation of Section 2910 of the Pennsylvania Crimes Code, the Court sentences the Defendant to a term of not less than six (6) months nor more than twelve (12) months, with this sentence to be served consecutive to his sentence for violation of 3123(a)(7) at No. 487, Criminal Sessions, 2011, and concurrent to his sentences at No. 485, Criminal Sessions, 2011. For the Charge of Obstructing the Administration of Law and law Enforcement, in violation of Section 5101 of the

14

Pennsylvania Crimes Code, the Court sentences the Defendant to a term of not less than one (1) months nor more than twelve (12) months, with this sentence to be served concurrent with his sentence for violation of Section 2909(a) and consecutive to his sentence for violation of 3123(a)(7) at No. 487, Criminal Sessions, 2011. This is a total sentence at Nos. 485 and 487, Criminal Sessions, 2011 of not less than ten and one-half (10-½) years nor more than twenty-one (21) years in the custody of the Department of Corrections. The Defendant shall pay all the costs associated with this proceeding and further, shall receive credit for time served.

Further, the court reporter is DIRECTED to prepare a transcript of this proceeding and the clerk is DIRECTED to send a copy of the Presentence Investigation to the Department of Corrections.

The Defendant is now remanded to the custody of the sheriff pending disposition of his case at No. 486, Criminal Sessions, 2011.

ATTEST:                                          BY THE COURT:

Sherry L. Wise                                   William R. Nalitz

_____                          _____

CLERK OF COURTS                                  PRESIDENT JUDGE

15